IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMAL COOPER, | ) |
| Movant, | ) ) ) |
| v. | ) ) Case No. 3:19-cv-01007 ) Judge Trauger |
| UNITED STATES OF AMERICA, | ) ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

Jamal Cooper, an inmate at the Federal Correctional Institution in Manchester, Kentucky, has filed a pro se motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence due to, the ineffective assistance of his trial counsel. (Doc. No. 1.) The government has filed a response to the § 2255 motion. (Doc. No. 9.) In order to inform his reply to the government's response, the movant has filed a motion for discovery, appointment of counsel, and an evidentiary hearing (Doc. No. 12), to which the government has now responded. (Doc. No. 16.) As explained below, the movant's motion for discovery, appointment of counsel, and an evidentiary hearing will be **DENIED**.

### I. BACKGROUND

As the movant describes in introducing his § 2255 motion,

> [t]his case arises out of a federal taskforce investigation into narcotics trafficking in Nashville, Tennessee during the summer of 2013. As the government investigated the case, it obtained several federal wiretaps for cellphones. The wiretap placed on [Target Telephone] 2 (TT2) was central to Cooper's prosecution. He unsuccessfully sought to suppress the evidence directly and derivatively gathered from TT2.

(Doc. No. 1 at 4–5.) Among the reasons proffered by the government affiant to demonstrate the wiretap's necessity was that normal investigative procedures, including the use of GPS tracking

1

devices on vehicles and GPS tracking of the movant's cell phone, had failed to yield sufficiently probative evidence to bring the lengthy investigation to prosecution. (Case No. 3:14-cr-00090, Doc. Nos. 465-2 at 48–49, 1602 at 5.) The movant ultimately entered into an agreement with the government wherein he pled guilty but reserved his right to appeal this court's orders denying his motions to suppress the wiretap evidence.[1] The plea agreement otherwise contained a waiver of appellate and post-conviction rights, with exceptions for any "claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel." (*Id.*, Doc. No. 1360 at 23.)

The movant was sentenced pursuant to his guilty plea and appealed the suppression issue to the Sixth Circuit Court of Appeals, which affirmed this court's denial of the motions to suppress the wiretap evidence. *See United States v. Cooper*, 893 F.3d 840 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 855 (2019). In doing so, the Sixth Circuit found that the 52-page affidavit in support of the TT2 wiretap application "contained facts sufficient to demonstrate the necessity of the wiretap" and further remarked that "one could argue that if *this* affidavit were found insufficient, it is unlikely that any affidavit would be sufficient to prove necessity for a wiretap." *Id.* at 844 (emphasis in original).

After unsuccessfully seeking review in the U.S. Supreme Court, the movant filed his § 2255 motion in this court. Among other grounds for relief, the movant alleges that his trial counsel was ineffective in failing to seek suppression of the wiretap evidence based on the wiretap application's reliance on (1) the government's warrantless acquisition of his cell-site location information (CSLI), which was obtained by securing records from his cellular service provider

---

[1] Counsel filed two motions to suppress the wiretap evidence in *United States v. Cooper*, No. 3:14-cr-00090-1 (M.D. Tenn. Apr. 19, 2017), the first on December 28, 2014 (*id.*, Doc. No. 464) and the second, following appointment of new counsel, on September 29, 2016 (*id.*, Doc. No. 1210).

2

that tracked his historical location, and (2) the government's use of GPS tracking, which it accomplished by (a) enlisting without a warrant the movant's cellular service provider to "ping," or send a signal to, his cell phone so as to generate a response identifying the cell phone's location in real time, and (b) surreptitiously placing a device on vehicles used by the movant (particularly a vehicle identified as "the Hummer"), largely as authorized by warrants obtained from Casey Moreland, a former state court judge who was subsequently prosecuted, convicted, and sentenced to federal prison for obstruction of justice, witness-tampering, and theft of funds. (Doc. No. 1 at 25–36.)[2] In his § 2255 motion, "Cooper specifically argues that police sought three search warrants for GPS trackers for the Hummer, that the first one purportedly dated October 24, 2013 did not in fact exist, that the information gained from that illegal search was used to establish probable cause for the subsequent warrants, and the evidence seized in all of these searches [(i.e., his location)] was fruit of the poisonous tree."[3] (*Id.* at 29.) The movant thus ultimately contends that his

---

[2] While the government in its answer contends that these claims are subject to the post-conviction waiver in the plea agreement and were procedurally defaulted when the movant failed to raise them on appeal (Doc. No. 9 at 19), ineffective assistance claims are explicitly excluded from the post-conviction waiver (*see id.* at 8), and Sixth Circuit precedent clearly states that § 2255 movants do not procedurally default ineffective assistance claims by failing to raise them on appeal. *See Jackson v. United States*, 45 F. App'x 382, 385 (6th Cir. 2002) (citing *Hughes v. United States*, 258 F.3d 453, 457 n.2 (6th Cir. 2001)).

[3] "[T]he Supreme Court has directed that 'all evidence obtained by an unconstitutional search and seizure [is] inadmissible in federal court regardless of its source.'" *United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (quoting *Mapp v. Ohio*, 367 U.S. 643, 654 (1961)). "This exclusionary rule is supplemented by the 'fruit of the poisonous tree' doctrine, which bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." *Id.* These longstanding common law principles apply in the context of wiretaps, as the governing statutory law has been construed to provide for suppression based on constitutional violations that render the communication at issue "unlawfully intercepted" under 18 U.S.C. § 2518(10)(a)(1), *Giordano*, 416 U.S. at 525–26, and to contain a "codification of the 'fruit of the poisonous tree doctrine'" in 18 U.S.C. § 2515. *United States v. Wac*, 498 F.2d 1227, 1232 (6th Cir. 1974) (citing *Nardone v. United States*, 308 U.S. 338, 341(1939)).

unlawfully obtained location data tainted all subsequent warrant applications in which it was used, including the TT2 wiretap application, and that his counsel was ineffective in failing to move to suppress the wiretap evidence on this basis.

## II. DISCOVERY REQUESTS

Rule 6 of the Rules Governing § 2255 Proceedings allows for discovery in such cases, but only "where specific allegations before the court show reason to believe that the [movant] may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Thomas v. United States*, 849 F.3d 669, 680 (6th Cir. 2017) (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Subsection (a) of Rule 6 states that the court may authorize discovery "for good cause," and subsection (b) places the burden on the party requesting discovery to "provide reasons for the request" and to "specify any requested documents." Rule 6, Rules Gov'g § 2255 Proceedings. The upshot of these requirements is that "[g]eneralized statements regarding the possibility of the existence of discoverable material will not be sufficient"; the movant must demonstrate that the requested discovery is material, "and it is material when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Velazquez-Rivera v. United States*, 54 F. Supp. 3d 168, 170 (D.P.R. 2014) (citations and internal quotation marks omitted)); *see also Till v. United States*, No. 107-CV-55, 2007 WL 1704397, at *7 (W.D. Mich. June 11, 2007) (citing *Williams v. Bagley*, 380 F.3d 932, 974 n.24 (6th Cir. 2004)) ("The moving party has the burden of establishing the materiality of the requested discovery. Rule 6 does not permit a defendant to embark upon a 'fishing expedition' based solely on conclusory allegations.").

In his motion for discovery, the movant asserts that "[t]he information that the government procured from the GPS trackers was crucial to the probable cause and necessity showings for

4

issuance of the wiretap warrant," particularly the GPS information on the Hummer. (Doc. No. 12 at 3.) He therefore seeks "an order directing the government to produce and provide to him all search warrants, whether issued by a state or federal court, authorizing the placement of GPS tracking devices on all vehicles that the government contends were in the name of, or under the control of, [the movant]—including more than one search warrant issued for one vehicle (e.g., the Hummer)." (*Id.* at 4.) The movant further requests "an order directing the government to provide him with the complaint(s) and indictment(s) it filed against Moreland and the plea agreement the government reached with Moreland." (*Id.* at 5.) In response, the respondent primarily focuses on the non-viability of the underlying Fourth Amendment issues, arguing that because "any suppression claims would be waived, previously determined, or procedurally defaulted anyway, Cooper's requests appear to be for information that is irrelevant to his § 2255 claim." (Doc. No. 16 at 3–4.) Unfortunately, this argument fails to consider the potential relevance of the requested discovery to the movant's viable claims that counsel was ineffective in arguing for suppression.

Regardless, the burden is on the movant to establish good cause for the discovery he requests. He is thus required to demonstrate grounds for believing that the requested records will support his claim that counsel was deficient in failing to argue that the unconstitutional use of his location data so tainted the wiretap affidavit as to render the subsequent interception unlawful. *See Velazquez-Rivera*, 54 F. Supp. 3d at 170 (requiring movant to demonstrate materiality of requested discovery); *Till*, 2007 WL 1704397 at *7 (same). This, he has failed to do.

To begin with, the connection the movant seeks to establish between the requested records of Moreland's "corruption and arrest . . . during the time he rubber-stamped the search warrants challenged here" (Doc. No. 1 at 34) and the validity of those warrants is purely speculative. He requests Moreland's criminal records in order to support his argument that Moreland was not a

5

neutral and detached judicial officer, and the evidence resulting from execution of warrants issued by Moreland therefore tainted the wiretap application, which counsel should have appreciated as grounds for the suppression motion. However, the records of Moreland's subsequent prosecution for obstruction of justice, witness-tampering, and theft are simply not relevant to the issue of whether the warrants he signed in the movant's case were valid, nor are they material to the movant's claims of ineffective assistance of counsel.[4]

Furthermore, the movant's allegation that all GPS tracking of the Hummer and subsequent vehicles was tainted because the first warrant for such tracking, "purportedly dated October 24, 2013[,] did not in fact exist," is conclusory. The request, based on this conclusory allegation, for all subsequent state and federal warrants for the placement of GPS trackers on all vehicles in the movant's name or under his control is a quintessential fishing expedition which the court will not authorize.

Even if the grounds for the movant's motion were not speculative or conclusory, the court finds that he has failed to demonstrate good cause for the requested discovery. The movant acknowledges that neither the Supreme Court nor the Sixth Circuit recognized a reasonable expectation of privacy in historical CSLI until June 22, 2018—the same day that the Sixth Circuit decided the movant's appeal. On that day, the Supreme Court (overruling the Sixth Circuit) issued its decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), holding that an individual's historical CSLI contained in the records of a cellular service provider is constitutionally protected. Thereafter, the Sixth Circuit determined that warrantless CSLI searches conducted before the 2018 Supreme Court decision in *Carpenter* would not require suppression if officers acted in good faith

---

[4] In any event, as the respondent points out in its response to the discovery motion (Doc. No. 16 at 4), the records of Moreland's federal prosecution may be obtained via request on PACER, https://pacer.uscourts.gov/, in case number 3:17-cr-00066.

reliance on existing law "when they obtained the data." *United States v. Pritchard*, 964 F.3d 513, 528–29 (6th Cir. 2020) (quoting *United States v. Carpenter*, 926 F.3d 313, 318 (6th Cir. 2019)). Because the warrant requirement did not apply to searches for historical CSLI prior to the Supreme Court's decision in *Carpenter*, references to such CSLI in the GPS warrants the movant seeks to discover would not assist him in demonstrating that his counsel was ineffective.

The movant also asks to discover the GPS warrants in order to determine whether they relied on information unlawfully obtained by an initial, warrantless use of a tracking device on the Hummer or by the warrantless pinging of his cell phone, so as to demonstrate that counsel was ineffective in failing to move on that basis to suppress the wiretap evidence. But even if the GPS warrants were informed by unlawfully obtained, real-time location data or were otherwise defective, the movant has not shown reason to believe that the wiretap evidence would have been subject to suppression as fruit of the poisonous tree. Indeed, there are two reasons to believe the contrary.

First, "[t]hough evidence obtained in violation of the Fourth Amendment is generally excluded, the Supreme Court has held that the exclusionary rule should be modified so as not to bar the admission of evidence seized in reasonable, good faith reliance on a search warrant that is subsequently held to be defective." *United States v. Carpenter*, 926 F.3d 313, 317 (6th Cir. 2019) (citation and internal quotation marks omitted). While the movant argues that the wiretap and GPS warrants were defective because of their reliance on prior location data obtained without a warrant or their issuance by Moreland, he does not explicitly argue that law enforcement procured or executed them unreasonably or in bad faith.

Second, the fruit of the poisonous tree doctrine will not preclude the admission of evidence that is so attenuated from the illegal search that the taint is thereby dissipated. *United States v.*

7

*Williams*, 615 F.3d 657, 668 (6th Cir. 2010) (quoting *Wong Sun v. United States*, 371 U.S. 471, 491 (1963)). "The Supreme Court has explained the attenuation doctrine as follows: 'We need not hold that all evidence is fruit of the poisonous tree simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made had been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the taint.'" *United States v. Fofana*, 666 F.3d 985, 992–93 (6th Cir. 2012) (quoting *Wong Sun*, 371 U.S. at 487–77). Here, the movant seeks discovery that he believes may reveal a domino effect between the government's use of tainted location data "to place him in certain drug distribution points" and to associate his phone with other targeted phones, and its eventual showing of the propriety and necessity of a wiretap. (Doc. No. 12 at 2.) But "[t]he nexus between the original illegality and the specific evidence subject to challenge must be a close one[;] . . . [i]t is not sufficient to demonstrate taint that an unlawful [search] may have been a factor in the decision to target a specific defendant or that an illegal search uncovers the alleged perpetrator's identity and therefore directs attention to a particular suspect." *United States v. Chavez-Chavez*, No. 07CR1408 WQH, 2008 WL 1847229, at *8 (S.D. Cal. Apr. 22, 2008) (citations and internal quotation marks omitted).

    Although the movant argues that the unlawfully procured GPS data was "crucial" to the sufficiency of the wiretap application (Doc. No. 12 at 3), this argument is not persuasive. This is not a case where the use of location data directly produced fruit in the form of a seizure of the movant's person or a search of the location where the data revealed the movant to be. *Cf.*, *e.g.*, *United States v. Hermiz*, 42 F. Supp. 3d 856, 869 (E.D. Mich. 2014) (finding no attenuation where GPS tracker placed on vehicle without a warrant and drugs were seized upon stop of the vehicle

following alert from tracker). In fact, to obtain wiretap authorization from the court, the government was required to demonstrate that its use of location data was *un*fruitful. *See* 18 U.S.C. § 2518(3)(c) (requiring wiretap application to demonstrate that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed"). Law enforcement primarily built their case against the movant using multiple confidential sources, two of whom conducted recorded telephone calls with the movant before carrying out controlled purchases of heroin from him, on December 12, 2013 and March 11, 2014. (*Id.* at 22–24, 27–29; *see also* Doc. No. 465, Cooper's First Motion to Suppress, at 4 ("The Defendant submits considerable information has been developed through the use of confidential sources.").) Such intervening audio, visual, and physical evidence of criminal activity would seem sufficient to disconnect the subsequent wiretap application and interceptions from any initial, unlawful tracking of the movant's location in real time.

The court need not analyze the attenuation issue in any greater detail to resolve the pending motion for discovery. Suffice it to say that the movant has not carried his burden of showing "reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Thomas v. United States*, 849 F.3d 669, 680 (6th Cir. 2017).

In sum, the movant has failed to show that his requested discovery, if allowed, would be reasonably likely to enable him to demonstrate his counsel's ineffectiveness. His motion for discovery of search warrants authorizing GPS tracking devices and of Casey Moreland's criminal records is therefore **DENIED**.

### III. REQUESTS FOR COUNSEL, IN CAMERA REVIEW, AND EVIDENTIARY HEARING

The motion is also **DENIED** with respect to the requested appointment of counsel, in camera review, and evidentiary hearing, without prejudice to being revisited at the proper time.

The movant requests appointment of counsel so that the requested discovery may be effectively utilized. (*See* Doc. No. 12 at 4, 7.) In light of the denial of the requested discovery, counsel will not be appointed at this time. In post-conviction proceedings, the appointment of counsel to an indigent movant is a matter within the court's discretion unless the case proceeds to an evidentiary hearing, in which case counsel must be appointed by rule. *Young v. United States*, No. 15-4063, 2017 WL 4358942, at *1–2 (6th Cir. Feb. 28, 2017) (citing, *e.g.*, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) and Rule 8(c) of the Rules Gov'g § 2255 Proceedings). Once this matter is fully briefed, the court will determine whether an evidentiary hearing—including the requested "*in camera* hearing to determine the existence of the informants, whether the report of their prior reliability is truthful, and whether Det. Lo's account of what the informants told him is correct" (Doc. No. 12 at 6)—is required, and thus whether counsel must be appointed.

## IV. CONCLUSION

In sum, the movant's motion for discovery, appointment of counsel, and an evidentiary hearing (Doc. No. 12) is **DENIED** as explained above. The movant's renewed motion for discovery, appointment of counsel, and an evidentiary hearing (Doc. No. 14) is **DENIED** as moot.

The movant **MUST** file his reply to the respondent's answer within **30 days** of the date this order is entered on the docket, unless the movant requests an extension of this deadline prior to its expiration.

It is so **ORDERED**.

_____
Aleta A. Trauger
United States District Judge